# UNITED STATES DISTRICT COURT
## FOR THE
## SOUTHERN DISTRICT OF FLORIDA

|  |  |
|---|---|
| ARSLAN TIKHONOV, | ) |
| Plaintiff(s) | ) Civil Action No. 1:23-cv-24572-JAL |
|  | ) |
| v. | ) |
|  | ) |
| ALEJANDRO MAYORKAS, et al., | ) |
| Defendants. | ) |

FILED BY _MC_ D.C.

JAN 19 2024

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

## PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

Sadaf F. Ahmed, Attorney for Plaintiff, JEELANI LAW FIRM, PLC, 3501 W. Algonquin Road, Ste. 200, Rolling Meadows, IL 60008, Ph: 312-767-9030, Facsimile: 312-549-9981, Email: sadaf@jeelani-law.com.

1

## TABLE OF CONTENT

Table of Authorities ..................................................................................................... i

Background ........................................................................................................... 5

Legal Standard ..................................................................................................... 6

    I.       Motion To Dismiss Under Federal Rule of Civil Procedure 12(b)(1)
    II.      Motion To Dismiss Under Federal Rule of Civil Procedure 12(b)(6)

Argument…………………………………………………….................................... 7

    I.      The Court Does Not Lack Subject Matter Jurisdiction to Issue a Writ of Mandamus ............................................................................................................... 7

    II.     Plaintiff Does Not Fail to State A Claim Under the APA ......................................... ............................................................................................................... 9

    III.   Plaintiff Tikhonov's Application Has Been Pending For An Unreasonably Long Time And The Court Should Dismiss Defendants' Motion To Dismiss Because TRAC Factors Favor Plaintiff ................................................12

CONCLUSION………………………………………….................................................. 20

# TABLE OF AUTHORITIES

## Cases

*Abhe & Svoboda, Inc. v. Chao*, 508 F.3d 1052, (D.C. Cir. 2007) ...................................... 7

*Ashcroft v. Iqbal*, 556 U.S. 662, (2009) ............................................................................ 7

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, (2007) ............................................................ 7

*Desai v.USCIS*, No. 20-cv-1005 (CKK), 2021 WL 1110737, (D.D.C. March 21 2021)

.............................................................................................................................................. 12

*Didban v. Pompeo*, 435 F. Supp. 3d 168, 175-77 (D.D.C. 2020) ................................... 14

*Ghadami v. DHS*, No. 19-cv-00397 (ABJ), 2020 WL 1308376, (D.D.C. Mar. 19, 2020)

.............................................................................................................................................. 14

*Herbert v. Nat'l Acad. of Sciences*, 974 F.2d 192, (D.C. Cir. 1992) ............................... 6

*Hollingsworth v. Duff*, 444 F. Supp. 2d 61, (D.D.C. 2006) ............................................ 6

In re United Mine Workers of Am. Int'l Union, 190 F.3d 545 (D.C. Cir. 1999).............. 6

*Karimushan v. Chertoff*, WL 2405729 ............................................................................. 6

*Koutny v. Martin*, 530 F. Supp. 2d 84, (D.D.C. 2007) ..................................................... 6

*Leatherman v Tarrant Cty. Narcotics Intelligence & Coordination* Unit, 507 U.S. 163, (1993)

.............................................................................................................................................. 6

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, (1992) ...................................................... 6

*Mashpee*, 336 F.3d 1094, at 1102 (D.C. Cir. 2003) ......................................................... 19

*Mugomoke v. Curda*, Civ. No. 2:10–CV–02166, 2012 WL 113800 ................................ 14

*Nio v. DHS*, 270 F. Supp. 3d 49, 66 (D.D.C. 2017) .......................................................... 13

*Chem. & Atomic Workers Union v. Occupational Safety & Health Admin.*, 145 F.3d 120, 123 (3d Cir. 1998) ............................................................................................ 13

*Papasam v. Allain*, 478 U.S. 265, (1986) ............................................................ 6

*Telecommunications Research & Action Center v. FCC*, 750 F.2d 70, (D.C. Cir. 1984) ............................................................................................ 12-20

*Trudeau v. Fed. Trade Comm'n*, 456 F.3d 178, (D.C. Cir. 2006) ...................................... 6

*Ward v. District of Columbia Dep't of Youth Rehab. Servs.*, 768 F. Supp. 2d 117, (D.D.C. 2011) ............................................................................................ 7

**Statutes**

5 U.S.C. §555(b) ............................................................................................ 10

5 U.S.C. § 701 ............................................................................................ 10

5 U.S.C. § 706(1) ............................................................................................ 11-13

8 USC § 1158(d)(5)(A)(iii) ............................................................................................ 8-9

## Background

Plaintiff, Arslan Tikhonov, is a Russian national who properly and timely filed Form I-589, Application for Asylum and Withholding of Removal with USCIS on April 7, 2020.

This action is brought as a result of Defendants' failure to adjudicate Plaintiff Tikhonov's Form I-589, Asylum Application within the statutory period of 180 days pursuant to 8 U.S.C. § 1158(d)(5)(A)(iii). Plaintiff Tikhonov's Application remains unadjudicated for over a total period of three years and nine months (over 45 months or 1380 days), as of the date of this filing, and will likely continue to remain unadjudicated without judicial intervention.

Plaintiff Tikhonov has not brought the instant action simply to be pushed to the front of the line to the detriment of other noncitizen applicants, as Defendants would like this Court to believe. To contrary, all Plaintiff Tikhonov is asking for is that his Application be adjudicated within a reasonable period of time as required by law. Plaintiff is not requesting a specific outcome and fully acknowledges that USCIS is in the best position to determine whether he is eligible for asylum, however, all he asks for is that Defendants make this determination within a reasonable period of time.  Many courts have found that the 180-day statutory period for the adjudication of asylum applications creates a non-discretionary duty to adjudicate Form I-589, as the statutory language anticipates, if not mandates, that Form I-589 be adjudicated within the prescribed 180-day period.

Without judicial overview the Defendants will continue to subject Plaintiff and the thousands of other asylum applicants to multi-year delays, keeping asylum applicant's in a state of limbo, claiming unfettered discretion in the adjudication of these applications and the like, when in fact the agency inaction and unreasonable delay is arguably the result of agency inefficiency and a mismanagement of agency resources rather than due to the constraints on the agency's

limited resources, surges of non-citizens detained at the border, COVID-19 pandemic, or other factors allegedly beyond the agency's control (see **Defendant's Mot. to Dismiss, p. 3**). Furthermore, Defendants claim that they have been prevented from adjudicating Plaintiff's Application due to the ongoing impact of COVID -19, however, most, if not all, USCIS Asylum Field Offices have been fully operational since around mid-2020, and most certainly through 2021 and 2022 to the present. Accordingly, Defendants should not be permitted to use the COVID-19 pandemic as a blanket excuse for their continued delay in adjudicating Plaintiff's Application and unlawfully withholding action on the same.

## Legal Standard

### I.      Motion To Dismiss Under Federal Rule of Civil Procedure 12(b)(1)

On a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, the plaintiff bears the burden of establishing that the court has jurisdiction. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992); *Hollingsworth v. Duff*, 444 F. Supp. 2d 61, 63 (D.D.C. 2006) (citation omitted). In reviewing a motion to dismiss pursuant to Rule 12(b)(1), courts must accept as true all factual allegations in the complaint and construe the complaint liberally, granting plaintiff the benefit of all inferences that can be drawn from the facts alleged. *See Leatherman v Tarrant Cty. Narcotics Intelligence & Coordination* Unit, 507 U.S. 163, 164 (1993); *Koutny v. Martin*, 530 F. Supp. 2d 84, (D.D.C. 2007) ("[A] court accepts as true all of the factual allegations contained in the complaint and may also consider 'undisputed facts evidenced in the record'") (internal citations omitted). A court need not accept as true "a legal conclusion couched as a factual allegation" nor an inference "unsupported by the facts set out in the complaint." *Trudeau v. Fed. Trade Comm'n*, 456 F.3d 178, 193 (D.C. Cir. 2006) (quoting *Papasam v. Allain*, 478 U.S. 265, 286 (1986)). In

deciding a motion to dismiss pursuant to Rule 12(b)(1), a court is not limited to the allegations of the complaint but may also consider materials outside of the pleadings. *Herbert v. Nat'l Acad. of Sciences*, 974 F.2d 192, 197 (D.C. Cir. 1992).

### II.    Motion To Dismiss Under Federal Rule of Civil Procedure 12(b)(6)

Pursuant to Rule 12(b)(6), a party may move to dismiss a complaint on grounds that it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A complaint is not sufficient if it "tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). In order to survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual allegations that, if accepted as true, "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. When considering a Rule 12(b)(6) motion, courts may consider "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint" or "documents upon which the plaintiff's complaint necessarily relies even if the document is produced not by the plaintiff in the complaint but by the defendant in a motion to dismiss." *Ward v. District of Columbia Dep't of Youth Rehab. Servs.*, 768 F. Supp. 2d 117, 119 (D.D.C. 2011) (internal quotation marks omitted). The court may also consider documents in the public record of which the court may take judicial notice. *Abhe & Svoboda, Inc. v. Chao*, 508 F.3d 1052, 1059 (D.C. Cir. 2007).

### Argument

I. **The Court Does Not Lack Subject Matter Jurisdiction to Issue a Writ of Mandamus Because Defendants Owe a Clear, Non-Discretionary Duty to Adjudicate**

Mandamus litigation may be pursued to compel administrative agencies to act. The Mandamus Act, codified at 28 U.S.C. § 1361, provides that *"[t]he district courts shall have original jurisdiction . . . to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."* In the majority of Mandamus cases, based on a claim for asylum, plaintiffs are seeking either for the agency to complete the adjudicative process, thereby rendering a decision, or scheduling the interview, contrary to Defendants' assertion that Plaintiff is requesting the court to compel a specific outcome or that he has simply filed this action to be pushed to the front of the line to the detriment of other asylum applicants who may have been waiting even longer than the Plaintiff for a final adjudication.

In order for a federal district court to provide relief under the Mandamus Act, plaintiffs must be able to affirmatively demonstrate that (1) they have a clear right to the relief requested; (2) the defendants have a clear duty to perform the act in question (adjudication of the Application); and (3) no other adequate remedy is available to the plaintiff. *Iddir v. INS,* 301 F.3d 492, 499 (7th Cir. 2002). In the instant case, Plaintiff Tikhonov meets his burden in establishing that he has a clear right to apply for asylum, the Defendants owe him a clear duty to adjudicate his Application, and there is no alternative remedy available to the Plaintiff, as he has exhausted his administrative remedies, and has been forced to pursue litigation against Defendants due to their own failure to act.

Pursuant to 8 USC § 1158(d)(5)(A)(iii), 'except in cases involving exceptional circumstances, final administrative adjudication of the asylum application, not including administrative appeal, shall be completed within 180 days after the date an application is filed. . ." Furthermore, the section would require that asylum applicants be scheduled for their required interviews within 45-days of the Application being filed. Defendants argue that the above would somehow seem to not require the adjudication of asylum applications to be completed within a fixed period of time and even excuse and justify inaction on their part, however, the more appropriate reading of 8 USC § 1158(d)(5)(A)(iii), would be that it anticipates, if not mandates that all applications for asylum be fully adjudicated within the 180-day adjudication window, Defendants "soft policy" guidelines as intended by Congress and contrary to Defendant's blanket excuses and assertions, there is no justification for agency inaction and unreasonable delay so significantly beyond the 180-days.

Courts have consistently found that where the underlying law anticipates the adjudication of an immigration application within the statutorily prescribed 120 days, as is the case for naturalization applications post interview, or 180 days for other immigration benefits, this creates a nondiscretionary duty to act, which is in turn subject to judicial review, contrary to Defendants' misguided belief that they have unfettered discretion and that their inaction is somehow precluded from judicial review.

Defendants would like us to believe that Plaintiff has no basis for bringing a claim under the Mandamus Statute or the APA for unreasonable delay and state that the delay is caused by factors beyond their control- specifically the surge in asylum applications, as a result of which Defendants have been forced to slow or effectively stop the adjudication of Plaintiff's Form I-589.

However, courts have held that such considerations alone are not sufficient to deny plaintiffs the right to seek Mandamus relief. See *Karimushan v. Chertoff*, WL 2405729, at *6; *Alverez v. Raufer*, CIVIL ACTION NO. 19-3155 (E.D. Pa. Mar. 11, 2020).

## II.   Plaintiff Does Not Fail to State A Claim Under the APA

Defendants request that this Court dismiss the instant action for failure to state a claim. However, Plaintiff has standing and has stated a claim for relief under the Administrative Procedure Act (hereinafter "APA").

Defendants Motion to Dismiss mistakenly alleges that Plaintiff Tikhonov's complaint should be dismissed for failure to state a claim on the misguided premise that the delay in the instant action is not unreasonable enough or egregious to warrant the current relief. Furthermore, Defendants appear to be under the notion that Plaintiff is requesting the Court to compel Defendants to make a specific determination of his Application and simply just push him to the "front of the line." To the contrary, what Plaintiff Tikhonov is requesting is that the Court compel Defendants to adjudicate his Form I-589, Application within a reasonable period of time pursuant to 5 U.S.C. §555(b) as required by law, which has as of the date of this filing, now been pending for over three years and nine months (over 45 months or 1380 days). There is no doubt that USCIS is undoubtedly in the best position to determine Plaintiff Tikhonov's eligibility for asylum and accordingly is in the best position to fully vet the applicant, and although the grant of asylum itself is discretionary, the duty to undertake and complete the adjudicative process is most certainly not a discretionary one.

The discretion conferred upon the Agency in determining whether to grant asylum should not be construed as the Agency having unfettered discretion and Defendants are entirely mistaken in believing that the Administrative Procedure Act (APA) precludes jurisdiction over an

unreasonable delay claim. See 5 U.S.C. § 701(a)(1). Defendants mistakenly assert that because a decision to grant or deny asylum is discretionary, the court somehow lacks the jurisdiction to review the Agency's inaction and unreasonable delay in the present case. However, if such a reading of the APA were to be permitted, this would undoubtedly lead to the absurd finding that Defendants could simply "sit" on the Application without being required to complete the adjudication of the same within a reasonable period of time, and without any consequences for their continued inaction and unreasonable delay. Such a reading would surely undermine the intent of the APA itself.

USCIS is required to schedule an interview within 45 days of the application being filed and thereafter complete the adjudication of the same within 180 days. (**Defs. Motion to Dismiss, p. 3**). Although some have construed Congress's 180-day time frame for the adjudication of immigration benefits may be non-binding, there remains an expectation that USCIS will adhere to the 180-day adjudication window for processing from the date of the initial filing. 8 U.S.C. §1571(b). The codification of this expectation would support Plaintiff's position that the adjudication of the Application itself is not discretionary and is most certainly not at the Defendants mercy and claimed unfettered discretion even if the grant of asylum itself may be.

Defendants' Rule 12(b)(6) argument also fails. Plaintiffs' well-pleaded complaint raises a plausible claim under the APA for unreasonable delay. Furthermore, Congress has authorized judicial intervention in cases involving a federal agency's failure to act and unreasonable delay. The Court is authorized to "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1), and therefore the Court should consider the Plaintiff's allegations as true and construe the facts in favor of the Plaintiff finding that Plaintiff has met the threshold in bringing a plausible claim under the APA based on Defendants failure to adjudicate.

Many plaintiffs will suffer irreparable harm as a direct consequence of USCIS's policy of prioritizing the most recently filed asylum applications for asylum interview scheduling over older filed applications (last in, first out- "LIFO"). *See* USCIS, *USCIS to Take Action to Address Asylum Backlog*, https://www.uscis.gov/archive/uscis-to-take-action-to-address-asylum-backlog (Jan. 31, 2018). USCIS has for a long time maintained that the adoption of LIFO is necessitated by the influx of asylum applications and the ever increasing backlog of adjudications, USCIS has failed to also timely schedule new asylum applicants for their required interviews and complete the final adjudications of their applications, forcing applicants with older-filed applications to be waiting for extended periods of time- often resulting in a multi-year limbo for these asylum applicants. In many cases, this extended delays results in the continued separation from family members and a delayed opportunity to adjust status. LIFO is not simply the agency's system of prioritizing certain applications over others, it is a system through which, in practice, it creates such unreasonable delays that it prevents thousands of asylum applicants from receiving a final adjudication or being scheduled for an interview.

Accordingly, the Court should not dismiss Plaintiff Tikhonov's complaint as he has brought a sufficient claim for relief.

III.   **Plaintiff Tikhonov's Application Has Been Pending For An Unreasonably Long Time And The Court Should Dismiss Defendants' Motion To Dismiss Because TRAC Factors Favor Plaintiff**

Defendants would like this Court to dismiss Plaintiff Tikhonov's complaint on the misguided assumption that a 41 month delay, as of the date he filed his Form I-589, Application for Asylum and Withholding of Removal, to the date he filed his complaint is somehow not unreasonable. However, Defendants have conveniently excluded reference to the fact that Plaintiff

Tikhonov's case remains unadjudicated and, has now been pending for over 45 months, (over three years and nine months or 1380 days) as of the date of this filing and will likely continue to remain unadjudicated for many months or even years without judicial intervention. "The standard by which the court reviews agency action under the Mandamus Act, 28 U.S.C. §1361, is the same standard applied to claims under § 706(1) of the APA." *Desai v. USCIS*, No. 20-cv-1005 (CKK), 2021 WL 1110737, at *8 (D.D.C. March 21 2021). Specifically, whether delays in agency adjudication are reasonable are judged by the six-factor test set out in *Telecommunications Research & Action Center v. FCC*, 750 F.2d 70, 77–78 (D.C. Cir. 1984) (*TRAC*).

The ultimate determination of whether a delay may be considered reasonable is "a fact intensive inquiry", requiring a substantial evidentiary record. *Nio v. DHS*, 270 F. Supp. 3d 49, 66 (D.D.C. 2017). Defendants assert that the TRAC factors weigh in their favor and therefore should require a dismissal of Plaintiff's complaint, however, numerous courts have held that a TRAC analysis is highly fact-dependent, and accordingly, is premature at the motion to dismiss stage and the Court should, therefore, deny Defendants' motion to dismiss. In *TRAC*, the court set out factors to determine whether an administrative delay is unreasonable ("TRAC factors"). In determining whether the Defendants have unreasonably delayed the complete and proper adjudication of Plaintiff's Application, 5 U.S.C. § 706(1), this Court must balance the following TRAC factors:

> (1) the time agencies take to make decisions must be governed by a "rule of reason";
> (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason;
> (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake;
> (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority;
> (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and
> (6) the court need not find any impropriety lurking behind agency

*lassitude in order to hold that agency action is 'unreasonably delayed.*

*TRAC*, 750 F. 2d at 79-80 (internal citations and quotation marks omitted).

"In applying these factors, the Court is not determining whether there has been an unreasonable delay; rather, it is determining whether plaintiff's complaint has alleged facts sufficient to state a plausible claim for unreasonable administrative delay." *Ghadami v. DHS*, No. 19-cv-00397 (ABJ), 2020 WL 1308376, at *7 n.6 (D.D.C. Mar. 19, 2020); see also *Didban v. Pompeo*, 435 F. Supp. 3d 168, 175-77 (D.D.C. 2020) (Cooper, J.) (applying TRAC factors in deciding motion to dismiss).

### A. TRAC Factors 1 and 2: Rule of Reason/ First Oil Factor

In examining the present case under TRAC factors 1 and 2, these factors would favor the Plaintiff. The first TRAC factor requires that the time an agency takes to make decisions be governed by a "rule of reason." *TRAC*, 750 F. 2d at 80; *See also* In re *United Mine Workers of Am. Int'l Union*, 190 F.3d 545, 549 (D.C. Cir. 1999) (quoting TRAC) ("The reasonableness determination is a fact-specific inquiry") *TRAC*, 750 F. 2d at 80; *See also Mugomoke v. Curda*, Civ. No. 2:10–CV–02166, 2012 WL 113800, at *4 (E.D.Cal. Jan.13, 2012) (citation omitted). ("The reasonableness determination is a fact-specific inquiry"). Defendants claim that Plaintiff has brought the instant action simply to be pushed ahead of other similarly situated applicaants, which would not result in any net gain and furthermore would not "cure the deficiencies of the asylum application process."(See **Defs. Mot. to Dismiss, p. 9**).

Under the first TRAC factor, "the time an agency takes to make decisions must be governed by a 'rule of reason.'" *Id.* In the instant case, Defendants claim that due to the influx of asylum applications and the ongoing backlog due to factors beyond their control, they have been forced to slow and effectively stop the adjudication of Plaintiff's Application given limited agency

resources. Many plaintiffs will suffer irreparable harm as a direct consequence of USCIS's policy of prioritizing the most recently filed asylum applications for asylum interview scheduling over older filed applications (last in, first out- "LIFO"). *See* USCIS, *USCIS to Take Action to Address Asylum Backlog,* https://www.uscis.gov/archive/uscis-to-take-action-to-address-asylum-backlog (Jan. 31, 2018).

Even though Defendants argue that the adoption of LIFO is necessitated by the influx of asylum applications, USCIS has not shown that it has successfully adjudicated the more recently filed asylum applications such that the adoption of LIFO would then allow for the expeditious adjudication of other pending applications. In fact, USCIS has failed to also timely schedule new asylum applicants for their required interviews within a timely manner and complete the final adjudications of their applications, forcing applicants with older-filed applications to now be waiting for extended periods of time- often resulting in a multi-year limbo for these asylum applicants. In many cases, this extended delay results in the continued separation from family members and a delayed opportunity to adjust status. LIFO is not simply the agency's system of prioritizing certain applications over others, it is a system through which, in practice, it creates such unreasonable delays that it prevents thousands of asylum applicants from receiving a final adjudication or being scheduled for an interview. Plaintiff is one such applicant.

Defendants further argue under the First TRAC Factor that Plaintiff's claim for relief will do nothing more than simply pushing him to front of the line ahead of other applicants and will do nothing to cure the deficiencies of the asylum application process. (**Defs. Mot. to Dismiss, p. 9**). However, it is not for the Plaintiff to be thinking about ways of "curing the deficiencies of the asylum application process" for that is the responsibility of the government agencies tasked with

the adjudication of these applications, and accordingly, should not be interpreted as a basis for denying Plaintiff his right to relief.

Plaintiff Tikhonov's Application has now been pending for over 45 months, a delay which Defendants would like us to believe is not only reasonable but also justified. Defendants claim that the three years and nine month delay is not sufficient, on a standalone basis, to challenge the unreasonableness of the delay itself. (**Defs. Mot. to Dismiss, p. 23**). Furthermore, Defendants would like this Court to believe that the matter is somehow not subject to judicial review and intervention, however, they fail to explain why claims for agency inaction and unreasonable delay under the Mandamus Statute and the APA are to be precluded from judicial review, especially now that the application has been pending for over a total of 45 months and they fail to provide a plausible explanation for the now 45 month delay. Accordingly, Defendants have not provided any explanation for there being a rule of reason behind Defendants unreasonable delay and failure to adjudicate Plaintiff Tikhonov's Application for over three years and nine months (over 45 months or 1380 days), beyond boilerplate excuses.

Additionally, in the instant case, Defendants claim that the statutory 180 day adjudication time frame does not create a mandatory duty, and  is no real benchmark for determining whether the delay in the instant action is unreasonable and go further in claiming that case law would not seem to consider the now 45 month delay unreasonable given that other cases have been pending even longer for other applicants. (See **Defs. Mot. to Dismiss, p. 23**).  Applicants have the ability to request the expedited adjudication of their applications asking USCIS directly to expedite the adjudication of the application. However, Plaintiff's request to have his Application expedited based on medical and humanitarian grounds has been previously denied by Defendants, leaving

Plaintiff no alternative course of action other than to bring the instant action. (**Defs. Mot. to Dismiss, p. 2**). Plaintiff's request has proven to be unfruitful.

Defendants claims would seem to ignore the fact that the question of reasonableness in such cases is a fact specific inquiry and clearly requires a case-by-case analysis versus a "blanket rule" that delays far longer than 41-months (as of the date the complaint was filed) or 45-months (as of the date of this filing) were not found to be unreasonable and therefore the delay in Plaintiff Tikhonov's case should also be considered reasonable. There is no premise for such a blanket rule and should not be considered a valid basis denying Plaintiff Tikhonov the relief he is seeking; that is for the Court to intervene and compel Defendants to take the action they are required to take by law. Plaintiff's request is neither novel nor is he asking to have the wheel reinvented. He is simply asking for the adjudication of his Application within a reasonable period of time.

Defendants claim that their inaction and delay in the adjudication of Plaintiff's Application is outside the scope of judicial review, however, such a claim is not only implausible but also illogical. Defendants would like us to believe that they are positioned to simply "sit" on an application and that there exists no affirmative duty, because the 180-day time frame for adjudication is somehow only "aspirational" rather than requiring affirmative action on the Application. (See **Defs. Mot. to Dismiss generally**). Furthermore, the arguments presented by Defendants are entirely unfounded and imply that they can take as long as they like in adjudicating certain applications and the Courts are somehow precluded from reviewing such agency inaction, however, such an argument is not only untenable but also entirely contrary to the purpose of judicial review under the APA.

Given that the Defendants have provided no excuse as to the reason for the delay, much less a reasonable one, it cannot be said that the rule of reason favors the Defendants. Plaintiff

claims Defendants have arbitrarily and intentionally delayed the adjudication of Plaintiff's Application, which suffices to "nudge [the claim] across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. Furthermore, Defendants motion to dismiss does not raise concerns about the plausibility of Plaintiff's complaint but rather goes to the merits of the case—whether USCIS' delay in adjudicating Plaintiff's I-589 is unreasonable. At this early stage, it would be premature to determine whether the delay has been unreasonable through a TRAC-factor analysis.

Based on this, there appears to be no sound basis for denying Plaintiff Tikhonov the right to have his Application adjudicated. For the reasons stated above, TRAC Factors 1 and 2, and first favor Plaintiff.

### B. TRAC Factor 4 Competing Priorities and Nature of Delay/ Fourth Oil Factor

Examining the present case under the fourth TRAC factor, it is clear that this factor would favor the Plaintiff. The Court "should also consider the nature and extent of the interests prejudiced by the delays." *TRAC v. FCC* at 80. The Plaintiff stands to be clearly prejudiced by the Defendants' delay in receiving a final adjudication of his Application and if approved, having the ability to adjust his status to that of a lawful permanent resident and thereafter apply for U.S. citizenship.

As to any competing interests, Defendants' motion does not provide sufficient information or evidence for this Court to weigh Defendants' interests, and in particular, the *effect of expediting delayed action on agency activities of a higher or competing priority*. In the instant case, the Defendants claim that they have been operating on a priority system and Defendants allege that judicial action would simply allow the Plaintiff to move ahead of others or front of the line; however, Defendants do not provide any data as to where exactly the Plaintiff falls in this "line." (*See* **Defs. Mot. to Dismiss, p. 9**). The Defendants assume without any factual basis that the

Plaintiff's Application is not already at the front of the line. Without further inquiry, it would indeed be a grave injustice to grant Defendants' Motion to Dismiss.

Defendants additionally allege that Plaintiff has brought this action simply to be "pushed to the front of the line" and that it would be unfair to allow Plaintiff to "jump" ahead of other noncitizen also impacted by agency inaction. **(Def. Motion to Dismiss, Page 9)**. If, there is any queue here in the government's system, the Plaintiff should certainly be at the front of such a queue given that he filed his Application well over 45 months ago. If not, and there are individuals whose applications have been even more delayed than the Plaintiff's, as referenced by Defendants **(Def. Motion to Dismiss, generally)**, this suggests that the Defendants' delay is the result of agency inefficiency and a mismanagement of agency resources allocated to them rather than due to some higher competing priority.

Furthermore, whether agency delay is reasonable or not reasonable "cannot be decided in the abstract, by reference to some number of months or years beyond which agency inaction is presumed to be unlawful[.]" See *Mashpee*, 336 F.3d 1094, at 1102 (D.C. Cir. 2003).

Accordingly, these factor favors the Plaintiff.

**C. TRAC Factors 3 and 5 Dangers to health and human Welfare**

As to the dangers to human health and welfare, the Complaint alleges that the "Plaintiff has and will endure significant financial and emotional hardships as a result of Defendants' failure to adjudicate his Application. Defendants would like this Court to believe that Plaintiff's basis for bringing this action is speculative, however, Plaintiff makes no such false or speculative claim for relief. Plaintiff is not requesting that the Court approve his Application, or that the Court compel a particular outcome in his case, all he is asking for is a fair shot at having his Form I-589 fully adjudicated, as required by law. As such, this factor, at least on its face, favors the Plaintiff.

Defendants minimize the impact a multi-year delay in adjudication can have on the applicant, reducing Plaintiff Tikhonov's plight by equating his suffering to some "angst" which they do not consider unique to asylum applicants.

Plaintiff Tikhonov is not asking to be pushed to the front of the line to the detriment of any other non-citizen, and nor is he asking the Court to undermine Defendant's system of prioritization or to reallocate funds or resources, or to undermine Defendants' decision making authority, indeed the Defendants would be in the best position to determine this, however, at a minimum, Plaintiff is entitled to the final adjudication of his Application within a reasonable period of time.

Based on the foregoing, TRAC Factor 3 and 5 also favor Plaintiff.

### D.  TRAC Factor 6 Impropriety

At this stage of litigation, Plaintiff has not alleged any impropriety, however, if litigation is permitted to proceed, such impropriety may be discovered.  However, at present, the Court need not find any impropriety lurking behind agency lassitude to hold that the agency action is unreasonably delayed. *TRAC v. FCC*, at 70 (D.C.C. 1984).

Accordingly, this Factor favors the Plaintiff.

## CONCLUSION

For the foregoing reasons, Plaintiff humbly requests that the Court deny Defendants Motion to Dismiss and grant him the relief he is seeking through the instant action.

Date:  January 17, 2024

Respectfully submitted,

/s/

**Sadaf F. Ahmed , Esq.**
**JEELANI LAW FIRM, PLC**
**3501 W. Algonquin Road, Ste. 200**
**Rolling Meadows, IL 60008**

sadaf@jeelani-law.com
**Phone:(248) 850-7841**
**Fax:(312) 767-9030**
*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I certify that on January 17, 2024, the foregoing document was served on all parties or

their counsel of record by serving a true and correct copy at the addresses listed below:


DAVID WERNER
Assistant U.S. Attorney
99 N.E. 4th Street
Miami, Florida 33132
Telephone: (786) 439-3194
Facsimile: (305) 530-7139



_Sadaf F. Ahmed_
Name

<u>January 17, 2024</u>
Date



ORIGIN ID:NOHA    (312) 767-9030
BRIAN KHOLODOVSKY, ESQ.
JEELANI LAW FIRM, P.L.C.
3501 ALGONQUIN ROAD
SUITE 200
ROLLING MEADOWS, IL 60008
UNITED STATES US

TO  CLERKS OFFICE

400 N MIAMI AVE

MIAMI FL 33157

(000) 000-0000
INV:
PO:
REF: PRO HAC VICE - SAOAF
DEPT:

SHIP DATE: 16JAN24
ACTWGT:
CAD: 10791089/INET/4660

BILL SENDER

**XG OCAA**

TRK#    7748 3394 2407
0201

WED - 17 JAN 10:30A
PRIORITY OVERNIGHT

33157
MIA
FL-US

583J3/B014/9AE3

FedEx
Express

J2348231B1501uv

**After printing this label:**
1. Use the 'Print' button on this page to print your label to your laser or inkjet printer.
2. Fold the printed page along the horizontal line.
3. Place label in shipping pouch and affix it to your shipment so that the barcode portion of the label can be read and scanned.

**Warning:** Use only the printed original label for shipping. Using a photocopy of this label for shipping purposes is fraudulent and could result in additional billing charges, along with the cancellation of your FedEx account number.
Use of this system constitutes your agreement to the service conditions in the current FedEx Service Guide, available on fedex.com.FedEx will not be responsible for any claim in excess of $100 per package, whether the result of loss, damage, delay, non-delivery,misdelivery,or misinformation, unless you declare a higher value, pay an additional charge, document your actual loss and file a timely claim.Limitations found in the current FedEx Service Guide apply. Your right to recover from FedEx for any loss, including intrinsic value of the package, loss of sales, income interest, profit, attorney's fees, costs, and other forms of damage whether direct, incidental,consequential, or special is limited to the greater of $100 or the authorized declared value. Recovery cannot exceed actual documented loss.Maximum for items of extraordinary value is $1,000, e.g. jewelry, precious metals, negotiable instruments and other items listed in our ServiceGuide. Written claims must be filed within strict time limits, see current FedEx Service Guide.