UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 23-24572-CIV-LENARD

**ARSLAN TIKHONOV,**

    Plaintiff,

**v.**

**ALEJANDRO MAYORKAS,** *et. al.***,**

    Defendants.
_____/

## ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

**THIS CAUSE** is before the Court on cross motions for summary judgment: Defendants'[1] Motion for Summary Judgment (D.E. 37), the Response in opposition (D.E. 46), and Reply in support (D.E. 58), and Plaintiff's Motion for Summary Judgment (D.E. 40),[2] the Response in opposition (D.E. 53), and Reply in support (D.E. 62). Upon review of the Motions, Responses, Replies, and the record, the Court finds as follows.

---

[1] Defendants are: Alejandro Mayorkas, in his official capacity as Secretary of the U.S. Department of Homeland Security ("DHS"); Ur Mendoza Jaddou, in her official capacity as the Director of U.S. Citizenship and Immigration Services ("USCIS"); Ted H. Kim, in his official capacity as Associate Director of USCIS's Refugee, Asylum, and International Operations Directorate; and Merrick Garland, in his official capacity as Attorney General of the United States (collectively, "Defendants").

[2] Plaintiff's initial motion was stricken for failure to include a Statement of Material Facts as required by Local Rule 56.1. (D.E. 38). On July 2, 2024, Plaintiff filed a Second Motion for Summary Judgment remedying this failure. (D.E. 40). The Court refers to the Second Motion as Plaintiff's Motion for Summary Judgment.

I. **Background**[3]

Plaintiff Arslan Tikhonov is a citizen of Russia. (D.E. 37-1 ¶ 1; D.E. 46-1 ¶ 1). Plaintiff left Russia on September 14, 2019, and entered the United States on that same date in New York City, New York, on a B2 visitor visa. (D.E. 37-1 ¶ 2; D.E. 46-1 ¶ 2). On April 7, 2020, Plaintiff filed his Form I-589, Application for Asylum and for Withholding of Removal ("Asylum Application") and supporting evidence. (D.E. 37-1 ¶ 3; D.E. 46-1 ¶ 3). Plaintiff indicated on his Asylum Application that he lived in Hallandale Beach, Florida. (D.E. 37-1 ¶ 4; D.E. 46-1 ¶ 4). Plaintiff applied for work authorization on May 12, 2022, and USCIS approved his work authorization from October 20, 2022, to October 19, 2024. (D.E. 37-1 ¶ 5; D.E. 46-1 ¶ 5). Plaintiff's work authorization has since been renewed through May 29, 2029. (*Id.*).

On June 23, 2023, Plaintiff sought congressional assistance from a Florida Representative with scheduling an interview concerning his pending Asylum Application. (D.E. 37-1 ¶ 6; D.E. 46-1 ¶ 6). On July 11, 2023, USCIS received Plaintiff's written request to expedite the scheduling of his asylum interview, which had been pending approximately three years. (D.E. 37-1 ¶ 7; D.E. 46-1 ¶ 7). Plaintiff sought an expedited interview on grounds that his father in Russia was diagnosed with cancer in his bladder. (D.E. 37-1 ¶ 8; D.E. 46-1 ¶ 8). Plaintiff wished to escort his father to Israel for an operation as he believed his father could receive better care in Israel than in Russia. (*Id.*). Plaintiff indicated that he had no other family members who were available to assist his father. (D.E. 37-1 ¶ 9;

---

[3] The following facts are undisputed by the Parties and supported by the record.

D.E. 46-1 ¶ 9). Attached to his expedite request, Plaintiff included medical documents related to his father dated between October 2022 and January 2023. (D.E. 37-1 ¶ 10; D.E. 46-1 ¶ 10). On July 19, 2023, USCIS denied Plaintiff's request finding that he did not satisfy the threshold criteria for expedited scheduling. (D.E. 37-1 ¶ 11; D.E. 46-1 ¶ 11). USCIS notified Plaintiff that his case was added to a list of cases that may be called for interview on short notice should an interview cancellation occur. (D.E. 37-1 ¶ 12; D.E. 46-1 ¶ 12).

Plaintiff's Asylum Application remains pending, and an interview has not been scheduled. (D.E. 37-1 ¶ 13; D.E. 46-1 ¶ 13). As of August 23, 2024, the Asylum Application has been pending since April 7, 2020—or for four years, four months, and sixteen days. (D.E. 58-1 ¶ 14; D.E. 46-1 ¶ 14). USCIS has not provided any time frame for when Plaintiff's asylum interview will be scheduled. (D.E. 46-1 ¶ 15; D.E. 58-1 ¶ 15).

On September 20, 2023, Plaintiff filed his Complaint for Writ in the Nature of Mandamus and Violation of the Administrative Procedures Act ("Complaint," D.E. 1).[4] Therein, he alleges a single violation of the Administrative Procedures Act ("APA") based upon Defendants' failure to adjudicate his Asylum Application "within 180 days of filing pursuant to 8 U.S.C. § 1158(d)(5)(A)(iii)." (D.E. 1 ¶ 23).[5]

---

[4] The Complaint was filed in the United States District Court for the District of Columbia before being transferred to this Court. (D.E. 7).

[5] Plaintiff mentions mandamus relief in the title of his Complaint and alleges in the Jurisdiction and Venue section that "this is a federal mandamus action brought to compel Defendants to perform their statutory duties owed to the Plaintiff." (*Id.* ¶ 9). However, the Complaint makes no other reference to mandamus relief and does not allege a separate claim under the Mandamus Act.

## II.     Legal Standards

On a motion for summary judgment, the Court must construe the evidence and factual inferences arising therefrom in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).  Summary judgment can be entered on a claim only if it is shown "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In addition, under Federal Rule of Civil Procedure 56(f)(1), the Court may grant summary judgment for the non-moving party "[a]fter giving notice and a reasonable time to respond."  Fed. R. Civ. P. 56(f)(1); *see also Gentry v. Harborage Cottages-Stuart, LLLP*, 654 F.3d 1247, 1261 (11th Cir. 2011).  The Supreme Court has explained the summary judgment standard as follows:

> [T]he plain language of [Rule 56] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) (internal quotation omitted).  The trial court's function at this juncture is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986).  A dispute about a material fact is genuine if the evidence is such that a reasonable fact-finder could return a verdict for the nonmoving party.  *Id.* at 248.

The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. Once the movant makes this initial demonstration, the burden of production, not persuasion, shifts to the nonmoving party. The nonmoving party must "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324; *see also* Fed. R. Civ. P. 56(c). In meeting this burden the nonmoving party "must do more than simply show that there is a metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). That party must demonstrate that there is a "genuine issue for trial." *Id.* at 587. An action is void of a material issue for trial "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *Id.*

### III. Discussion

#### A. Plaintiff's Mandamus Claim

As discussed, although Plaintiff wrote the word "mandamus" twice in his Complaint, he did not specifically allege a claim under the Mandamus Act. The Court thus finds that Plaintiff has not properly pleaded a mandamus claim, and he may not raise new claims at the summary judgment stage. *See Moise v. Miami-Dade Cnty.*, No. 17-20993-CIV, 2018 WL 4445111, at *12 (S.D. Fla. Aug. 22, 2018) (Lenard, J.). Plaintiff's mandamus claim is thus due to be dismissed.

Assuming *arguendo* that Plaintiff properly pleaded the claim, dismissal would still be warranted. "Mandamus relief is only appropriate when: (1) the plaintiff has a clear right to the relief requested; (2) the defendant has a clear duty to act; and (3) no other adequate remedy is available." *Cash v. Barnhart*, 327 F.3d 1252, 1258 (11th Cir. 2003). As explained below, the APA provides an alternative remedy. *See Serrano v. U.S. Att'y Gen.*, 655 F.3d 1260, 1264 (11th Cir. 2011) (explaining that the plaintiff "sued under the APA, which provides an adequate remedy," so "the district court properly dismissed his request for mandamus relief").

### B. Plaintiff's APA Claim[6]

Plaintiff moves for summary judgment asserting that USCIS's Last-In First Out ("LIFO") policy for asylum applications is arbitrary, capricious, and not in accordance with law, and that USCIS is unlawfully withholding action on his Asylum Application. (D.E. 40 at 9–10). Defendants counter arguing that Plaintiff has not identified any aspect of USCIS's policy that is arbitrary, capricious, or not in accordance with law. (D.E. 53 at 18). Defendants further contend that Plaintiff has not provided an analysis of the factors set forth in *Telecomm's Rsch. & Action Ctr. v. FCC*, 750 F.2d 70, 80 (D.C. Cir. 1984) ("*TRAC*" or "*TRAC* factors")[7] as required to establish an unreasonable delay claim. (D.E. 53 at 24).

---

[6] The APA is codified in 5 U.S.C. §§ 551–559.

[7] On March 12, 2024, the Court denied Defendants' Motion to Dismiss finding "that analysis of the *TRAC* factors is inappropriate at the motion to dismiss stage due to their fact-intensive nature." (D.E. 25 at 5). *See also Raju v. Cuccinelli*, No. 20-CV-01386-AGT, 2020 WL 4915773, at *1 (N.D. Cal. Aug. 14, 2020) ("[B]ecause the grounds for agency delay will often be unknown to plaintiffs at the pleading stage, unreasonable-delay claims are ordinarily best resolved on or after summary judgment[.]"). Now, at summary judgment, the Court has a sufficient record on which to rule.

Defendants move for summary judgment asserting that the Court lacks subject matter jurisdiction over Plaintiff's APA claim. (D.E. 37 at 20). Even assuming the Court has jurisdiction, Defendants contend that under the *TRAC* factors the undisputed facts do not establish unreasonable delay. (*Id.* at 21). Plaintiff counters arguing that the issue of whether the delay in this case is unreasonable represents a disputed material fact. (D.E. 46 at 4).

### 1. Subject Matter Jurisdiction

In his Complaint, Plaintiff alleges that under the Immigration and Nationality Act ("INA")[8] "Defendants have a statutory duty to adjudicate asylum applications within 180 days of filing pursuant to 8 U.S.C. § 1158(d)(5)(A)(iii)." (D.E. 1 ¶ 23). Plaintiff thus alleges that "Defendants have failed in their statutory duty" as his Asylum Application remains pending long after the 180-day mark. (*Id.* ¶ 27). Defendants assert that the Court lacks jurisdiction to review Plaintiff's claim because the 180-day timeframe in the INA is aspirational rather than mandatory, and Congress expressly provides that nothing in subsection 1158(d) "shall be construed to create any substantive or procedural right or benefit that is legally enforceable by any party against the United States." 8 U.S.C. § 1158(d)(7). In his subsequent filings, Plaintiff clarifies that his claim is premised on the APA's requirement that agencies act "within a reasonable time," 5 U.S.C. § 555(b), rather than the aspirational 180-day INA provision, 8 U.S.C. § 1158(d)(5)(A)(iii). *See* Response to Defendant's Motion for Summary Judgment (D.E. 46 at 3 ("Contrary to Defendants'

---

[8] The INA is codified in 8 U.S.C. §§ 1101–1537.

position, Plaintiff maintains that while the INA may not specify strict timelines, USCIS is obligated under the APA to adjudicate asylum applications within a reasonable time.")); Reply to Defendant's Response to Motion for Summary Judgment (D.E. 62 at 1 (clarifying that Plaintiff's claim is premised on the APA's requirement that agencies act "within a reasonable time" per § 555(b))). The Court thus finds that Plaintiff has abandoned his unreasonable delay claim based on the strict 180-day provision in the INA, § 1158(d)(5)(A)(iii).

The Court thus proceeds to Plaintiff's unreasonable delay claim under the APA. Title 28, Section 1331 of the United States Code gives district courts "original jurisdiction of all civil actions arising under the ... laws ... of the United States," and the APA provides that "within a reasonable time, each agency shall proceed to conclude a matter presented to it." 5 U.S.C. § 555(b). The APA further permits a court to "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). In sum, the Parties and the Court agree that it has subject matter jurisdiction to review agency action for unreasonable delays under the APA. (*See* D.E. 58 at 2 ("[g]iven that Plaintiff now relies upon the APA, which, subject to certain considerations, creates a duty to act within a reasonable time, this Court has jurisdiction to review Plaintiff's unreasonable-delay claim.")).

2.     *TRAC* Factors[9]

Courts generally look at the six-factor balancing test set forth in *TRAC*, 750 F.2d at 80, to determine whether agency action is unreasonably delayed.  *See Arenales-Salgado-De-Oliveira v. Jaddou*, No. 23-61167-CIV, 2024 WL 68291, at *13 n.16 (S.D. Fla. Jan. 5, 2024) (Altonaga, CJ.) ("The Eleventh Circuit has not expressly adopted the *TRAC* factors, but they are widely used by district courts in this Circuit and other Circuits.").  The factors to be balanced are:

> (1) the time agencies take to make decisions must be governed by a 'rule of reason,' (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason, (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake, (4) the court should consider the effect of expediting delayed agency action on agency activities of a higher or competing priority, (5) the court should also take into account the nature and extent of the interests prejudiced by the delay, and (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is 'unreasonably delayed.'

---

[9] In analyzing the *TRAC* Factors, the Court notes that Plaintiff has not provided any evidentiary support.  The Court takes judicial notice of the Certified Administrative Record (D.E. 32) (under seal) along with Defendants' exhibits attached to the Declaration of Michelle M. Ramus.  (D.E. 37-2).  The Court's citation to DOJ 000 refers to the pagination on the bottom right-hand corner of the exhibits—all of which are documents that USCIS or its parent agency, DHS, have created and published on their official websites.  The Court finds it appropriate to take judicial notice of the documents and their contents.  *See* Fed. R. Evid. 201(b)(2) ("The court may judicially notice a fact that is not subject to reasonable dispute because it can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.")  District courts within this Circuit have taken judicial notice of USCIS decisions and other information readily available on the websites of government agencies.  *Ryzhov v. Mayorkas*, 634 F. Supp. 3d 1107, 1111–12 (S.D. Fla. 2022) (Graham, J.) (collecting cases).

Additionally, Plaintiff makes no objection to the Court taking judicial notice.  In fact, Plaintiff cites to the Certified Administrative Record and Defendants' exhibits and relies upon the contents in support of his position.  (*See* D.E. 46 at 3, 5–9).

*TRAC*, 750 F.2d at 80 (citations omitted).[10]

        **i.**    ***TRAC* Factors 1 and 2: Rule of Reason and Congressional Timetable**

"Courts typically consider *TRAC* factors one and two together." *Dastagir v. Blinken*, 557 F. Supp. 3d 160, 165 (D.D.C. 2021). Together, "these factors get at whether the agency's response time complies with an existing specified schedule and whether it is governed by an identifiable rationale." *Ctr. for Sci. in the Pub. Int. v. U.S. Food & Drug Admin.*, 74 F. Supp. 3d 295, 300 (D.D.C. 2014). The first factor is the "most important" when determining whether to grant relief. *In re Core Commc'ns, Inc.*, 531 F.3d 849, 855 (D.C. Cir. 2008).

Here, Defendants identify LIFO as a "rule of reason." Defendants provide a detailed explanation of the rationale behind LIFO. (*See* D.E. 37 at 12–18; D.E. 53 at 11–15). In brief, asylum seekers may maintain gainful employment in the United States by obtaining an Employment Authorization Document ("EAD") while their asylum applications are pending. *See* 8 U.S.C. § 1158(d)(2); 8 C.F.R. § 208.7(a)(1). Consequently, "many asylum seekers filed frivolous asylum applications to obtain an EAD." (D.E. 37 at 13 (citing DOJ 024)). LIFO was implemented in response.[11] "By giving priority to the newest cases, applicants who may have filed asylum applications solely to obtain work authorization

---

[10] Plaintiff concedes that the *TRAC* factors govern the unreasonable delay analysis. (*See* D.E. 46 at 12 (listing the *TRAC* factors)). However, Plaintiff fails to analyze the individual *TRAC* factors in his Motion for Summary Judgment. (*See generally*, D.E. 40).

[11] Defendants explain that LIFO was in place from January 4, 1995, to December 31, 2014. (D.E. 37 at 14). Then, "to stem the rising tide of fraudulent filings, the Asylum Division announced it would return to LIFO on January 31, 2018." (*Id.* at 15).

risked having their cases heard quickly, meaning that their efforts to file solely to obtain work authorization would be fruitless." (*Id.* at 14). The undisputed facts show that LIFO has been effective at reducing the number of new asylum applications as well as the backlog of existing cases. (*Id.* at 16). Nevertheless, despite LIFO and other initiatives highlighted by Defendants:

> [T]he COVID-19 pandemic required all asylum offices to temporarily close for two months and operate at a greatly reduced capacity for a long time thereafter, exacerbating the backlog. DOJ 193, 209–211. Then, in FY 2022, the Asylum Division received 221,000 new affirmative asylum applications—a 352% increase from 2021—largely attributed to a surge in applications filed by nationals of two countries experiencing well-documented periods of turmoil: Cuba and Venezuela. DOJ 189; *see also* DOJ 288–290 (announcing a new process for nationals of Cuba,Haiti, Nicaragua, and Venezuela "fleeing humanitarian crises" to lawfully travel to the United States). And in December 2022, Congress failed to include continued funding for asylum processing or backlog reduction in its annual appropriations package for FY 2023. DOJ 190–191; *see also* Consolidated Appropriations Act, 2023, Pub. L. No. 117-328, 136 Stat. 4459 (Dec. 29, 2022).
>
> Recently, in order the address the affirmative asylum backlog to the extent possible, while continuing to deter frivolous applications, USCIS bolstered its LIFO methodology by beginning to schedule affirmative asylum interviews along two tracks simultaneously. DOJ 019. The first track uses the LIFO priorities whereas the second track prioritizes FIFO to address the oldest pending cases. *Id.* USCIS has dedicated some of its asylum officers to assist in reducing the backlog on the second track permitting some of the oldest pending applications to be completed in chronological order. *Id.*
>
> The Asylum Division continues to balance its asylum caseload with competing high priority items such as border screenings, unaccompanied child applications, and a congressionally mandated acceleration of applications filed by certain Afghan parolees under Operation Allies Welcome. *See* Extending Government Funding and Delivering Emergency Assistance Act § 2502(a), (c), Pub. L. No. 117-43, 135 Stat 344, 377 (Sep. 30, 2021). The Asylum Division must therefore manage its limited staff of highly trained officers as efficiently as possible.

(*Id.* at 16–18).

In his Motion for Summary Judgment, Plaintiff generally relies on the passage of time since submission of his Asylum Application and asserts that his "injury stems primary from LIFO[.]" (D.E. 40 at 11). However, the undisputed facts show that USCIS's backlog dropped significantly after LIFO's implementation in 2018. (D.E. 37 at 15–16). Additionally, asylum applications pending since before FY2012 are relatively small—1,100 cases out of the 667,040 asylum applications pending adjudication, or 0.1 percent, as of December 31, 2022. (D.E. 37-2 at 192).

"Courts routinely hold USCIS's first-in, first-out policy is a rule of reason that satisfies the first *TRAC* factor." *Mafundu v. Mayorkas*, 699 F. Supp. 3d 1310, 1317 (S.D. Fla. 2023) (Ruiz, J.) (collecting cases). Based on the undisputed facts, this Court agrees that the policy sufficiently qualifies as "an identifiable rationale" that satisfies the first *TRAC* factor. *Ctr. for Sci. in the Pub. Int.*, 74 F. Supp. 3d at 300. In sum, the first *TRAC* factor favors Defendants and weighs heavily against Plaintiff.

As for the second factor, Plaintiff observes that "[t]here is 'no per se rule as to how long is too long' to wait for agency action." (D.E. 46 at 14 (quoting *In re Int'l Chem. Workers Union*, 958 F.2d 1144, 1149 (D.C. Cir. 1992)). The Court agrees. As discussed, the time periods in the INA are merely aspirational, and the undisputed facts show there is a substantial backlog and growing number of asylum applications as compared to the number of asylum adjudicators. As such, the second *TRAC* factor also weighs against Plaintiffs because they have not identified any "timetable or other indication of the speed

with which [Congress] expects the agency to proceed in the enabling statute." *TRAC*, 750 F.2d at 80.

> ii. *TRAC* Factors 3 and 5: Human Health and Welfare and the Nature of the Interests Prejudiced by the Delay

The third and fifth factors ask the Court to consider (1) whether "human health and welfare are at stake;" and (2) "the nature and extent of the interests prejudiced by delay." *TRAC*, 750 F.2d at 80. Plaintiff cites to the "emotional and psychological toll of uncertainty and prolonged separation from family members, including his inability to accompany his father for potentially life-saving medical treatment abroad." (D.E. 46 at 16). "Peace of mind" has been considered by courts undertaking a *TRAC* analysis to weigh in a plaintiff's favor in other immigration contexts; for example, when an applicant for asylum had an application pending for eight years. *Geneme v. Holder*, 935 F. Supp. 2d 184, 193–94 (D.D.C. 2013); *but see Rambang v. Mayorkas*, 2012 WL 2449927, at *5–*7 (D. Minn. June 27, 2012) (holding that an allegation of harm to "peace of mind" was sufficiently alleged harm at the motion to dismiss stage, but insufficient in a *TRAC* balancing analysis on a motion for summary judgment). However, courts have also held that uncertainty and the inability to move forward with the normal course of life are inherent risks of engaging in the immigration process, and weigh against finding that the third and fifth *TRAC* factors favor a plaintiff. *Bega v. Jaddou*, No. CV 22-02171 (BAH), 2022 WL 17403123, at *7 (D.D.C. Dec. 2, 2022), *aff'd sub nom. Da Costa v. Immigr. Inv. Program Off.*, 80 F.4th 330 (D.C. Cir. 2023); *Desai v. U.S. Citizenship & Immigration Servs.*, 2021 WL 1110737, at *7 (D.D.C. Mar. 22, 2021); *Fangfang Xu v. Cissna*, 434 F. Supp. 3d 43, 54 (S.D.N.Y.

2020). Rather, these challenges are "inherent in the process of seeking asylum" and do not, on their own, establish an unreasonable delay. *Liuqing Zhu v. Cissna*, No. CV 18-9698 PA (JPRX), 2019 WL 3064458, at *4 (C.D. Cal. Apr. 22, 2019).

Here, the Court notes that Defendant is permitted to live in the United States without fear of removal while his Asylum Application is pending. He is additionally permitted to maintain employment, and his work authorization was recently extended through May 29, 2029. While not minimizing the challenges Plaintiff is facing, the Court finds persuasive the fact that he is permitted to live and work in the United States as he waits for final adjudication of his Asylum Application. In sum, *TRAC* factors 3 and 5 slightly favor Plaintiff; however, they do not establish an unreasonable delay.

### iii. *TRAC* Factor 4: Effect of Expediting Delayed Action

Next, the Court must "consider the effect of expediting delayed action on agency activities of a higher or competing priority." *TRAC*, 750 F.2d at 80. Courts in this district have found *TRAC* factor 4 dispositive in denying relief. *See, e.g.*, *Echeverri v. United States Citizenship & Immigr. Servs.*, No. 23-CV-21711-RAR, 2023 WL 5350810, at *7 (S.D. Fla. Aug. 21, 2023) (Ruiz, J.) (stating that awarding relief "would set a dangerous precedent, sending a clear signal that more litigious applicants are more likely to be moved to the top of the proverbial pile over other applicants that have waited even longer."). In situations "where a judicial order putting the petitioner at the head of the queue would simply move all others back one space and produce no net gain," the agency has not unreasonably delayed action. *Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1100 (D.C. Cir. 2003). Plaintiff contends that "he does not seek to disrupt the

entire queue but rather seeks timely adjudication of his asylum application based on the specific circumstances of his individual case." (D.E. 46 at 17).  However, Plaintiff provides no legal justification for why USCIS should allow him to skip the line ahead of others who have been waiting longer.  In sum, *TRAC* factor 4 strongly favors Defendants.

### iv.   *TRAC* Factor 6: Impropriety

The final *TRAC* factor is merely a reminder that the Court need not find impropriety to conclude that an action is unreasonably delayed.  *See e.g. Mafundu v. Mayorkas*, 699 F. Supp. 3d 1310, 1319 (S.D. Fla. 2023) (Ruiz, J.).  Plaintiff has not alleged, much less identified, any intentional, bad faith actions by Defendants, nor is it necessary for him to do so.  Given the body of publicly available, judicially noticed documents from the agency showing the reasons for the delay, the sixth *TRAC* factor is not relevant.  The Court thus finds this factor to be neutral for both Parties.

## IV.   Conclusion

In sum, nearly all the *TRAC* factors favor Defendants, and the Court finds that the undisputed facts do not establish unreasonable delay under the APA.  Therefore, there is no "genuine issue for trial" and the Court shall grant Defendants' Motion for Summary Judgment and deny Plaintiff's Motion for Summary Judgment.  *Matsushita Elec. Indus. Co.*, 475 U.S. at 586.  While the Court encourages Defendants to adjudicate Plaintiff's Asylum Application with due haste, it finds that the approximately four-and-a-half-year delay is not unreasonable under the circumstances.

Accordingly, it is **ORDERED AND ADJUDGED** that:

1. Plaintiff's Motion for Summary Judgment (D.E. 40) is **DENIED**;

2. Defendants' Motion for Summary Judgment (D.E. 37) is **GRANTED**;

3. Final Judgment shall issue by separate Order.

**DONE AND ORDERED** in Chambers at Miami, Florida this 6th day of November, 2024.

                                                         *[signature]*
                                        **JOAN A. LENARD**
                                        **UNITED STATES DISTRICT JUDGE**